[L.A. No. 30940. Aug. 21, 1979.]

CAMERON CHARLES TAYLOR, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
CLAIR WILLIAM STILLE, Real Party in Interest.

**COUNSEL**

Miller, Glassman & Browning, Jerome M. Jackson and Stephen D. Miller for Petitioner.

Robert E. Cartwright, Edward I. Pollock, Leroy Hersh, Stephen I. Zetterberg, Robert G. Beloud, Arne Werchick, William P. Camusi, Ralph Drayton and Leonard Sacks as Amici Curiae on behalf of Petitioner.

Wise & Nelson and Duane H. Timmons for Real Party in Interest.

**OPINION**

**RICHARDSON, J.**—We consider whether punitive damages (Civ. Code, § 3294) are recoverable in a personal injury action brought against an intoxicated driver. As will appear, we have concluded that the act of operating a motor vehicle while intoxicated may constitute an act of "malice" under section 3294 if performed under circumstances which disclose a conscious disregard of the probable dangerous consequences.

Accordingly, we will issue a writ of mandate directing the trial court to reinstate that portion of the complaint which sought recovery of punitive damages.

Petitioner Taylor is the plaintiff in a civil action against defendant and real party Stille (and others) for damages arising from an automobile accident. Because the matter is presented to us following the sustaining of defendant's demurrer as to the prayer for punitive damages, the issues are framed by the allegations of the complaint which we now examine. In pertinent part, the complaint alleged that the car driven by Stille collided with plaintiff's car, causing plaintiff serious injuries; that Stille is, and for a substantial period of time had been, an alcoholic "well aware of the serious nature of his alcoholism" and of his "tendency, habit, history, practice, proclivity, or inclination to drive a motor vehicle while under the influence of alcohol"; and that Stille was also aware of the dangerousness of his driving while intoxicated.

The complaint further alleged that Stille had previously caused a serious automobile accident while driving under the influence of alcohol; that he had been arrested and convicted for drunken driving on numerous prior occasions; that at the time of the accident herein, Stille had recently completed a period of probation which followed a drunk driving conviction; that one of his probation conditions was that he refrain from driving for at least six hours after consuming any alcoholic beverage; and that at the time of the accident in question he was presently facing an additional pending criminal drunk driving charge.

In addition, the complaint averred that notwithstanding his alcoholism, Stille accepted employment which required him both to call on various commercial establishments where alcoholic beverages were sold, and to deliver or transport such beverages in his car. Finally, it is alleged that at the time the accident occurred, Stille was transporting alcoholic beverages, "was simultaneously driving . . . while consuming an alcoholic beverage," and was "under the influence of intoxicants."

Based upon the foregoing allegations, plaintiff asserted in his complaint that Stille "acted with a conscious disregard of Plaintiff['s] safety. . . ." In addition to compensatory damages, plaintiff sought $100,000 in punitive damages. Stille demurred to the complaint, contending that punitive damages could not be assessed against a negligent, intoxicated driver, at least in the absence of allegations to the effect that the driver actually intended to cause an accident or injury. The trial court

sustained the demurrer to the complaint insofar as it sought recovery of punitive damages, and plaintiff thereupon filed the present mandate proceeding.

■ Although we rarely grant extraordinary relief at the pleading stage of a lawsuit, mandamus will lie when it appears that the trial court has deprived a party of an opportunity to plead his cause of action or defense, and when extraordinary relief may prevent a needless and expensive trial and reversal. (*Coulter* v. *Superior Court* (1978) 21 Cal.3d 144, 148 [145 Cal.Rptr. 534, 577 P.2d 669]; *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].) Such a combination of circumstances is herein presented and, accordingly, we examine the propriety of the trial court's ruling in the light of applicable statutory and decisional law.

Section 3294 of the Civil Code authorizes the recovery of punitive damages in noncontract cases "where the defendant has been guilty of oppression, fraud, or malice, express or implied. . . ." As we recently explained, "This has long been interpreted to mean that malice in fact, as opposed to malice implied by law, is required. [Citations.] The malice in fact, referred to . . . as animus malus, may be proved under section 3294 either expressly (by direct evidence probative on the existence of hatred or ill will) or by implication (by indirect evidence from which the jury may draw inferences). [Citation.]" (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 66 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].)

Other authorities have amplified the foregoing principle. Thus it has been held that the "malice" required by section 3294 "implies an act conceived in a spirit of mischief or with criminal indifference towards the obligations owed to others." (*Ebaugh* v. *Rabkin* (1972) 22 Cal.App.3d 891, 894 [99 Cal.Rptr. 706]; see *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 527 [322 P.2d 933]; Stein, Damages and Recovery (1972) Nominal and Punitive Damages, § 186, at p. 369; Prosser, Law of Torts (4th ed. 1971) § 2, at pp. 9-10.) In Dean Prosser's words: "Where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime, all but a few courts have permitted the jury to award in the tort action 'punitive' or 'exemplary' damages. . . . [¶] Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, *or such a conscious and deliberate*

*disregard of the interests of others that his conduct may be called wilful or wanton." (Ibid.,* fns. omitted, italics added.)

Defendant's successful demurrer to the complaint herein was based upon plaintiff's failure to allege any actual intent of defendant to harm plaintiff or others. Is this an essential element of a claim for punitive damages? As indicated by Dean Prosser, courts have not limited the availability of punitive damages to cases in which such an intent has been shown. As we ourselves have recently observed, in order to justify the imposition of punitive damages the defendant " '. . . must act with the intent to vex, injure, or annoy, *or with a conscious disregard of the plaintiff's rights.* [Citations.]' " (Italics added; *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 922 [148 Cal.Rptr. 389, 582 P.2d 980], quoting from *Silberg* v. *California Life Ins. Co.* (1977) 11 Cal.3d 452, 462 [113 Cal.Rptr. 711, 521 P.2d 1103]; accord, *Seimon* v. *Southern Pac. Transportation Co.* (1977) 67 Cal.App.3d 600, 607 [136 Cal.Rptr. 787]; *G. D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d 22 [122 Cal.Rptr. 218].)

The *Searle* court, speaking through Justice Friedman, after reviewing many of the earlier decisions, concluded that "The phrase *conscious disregard* is sometimes used to describe the highly culpable state of mind which justifies an exemplary award. . . . [¶] We suggest *conscious disregard of safety* as an appropriate description of the *animus malus* which may justify an exemplary damage award when nondeliberate injury is alleged." (Italics in original, p. 32.) The *Searle* court likewise rejected suggestions in earlier cases that mere *reckless* disregard or misconduct would be sufficient to sustain an award of punitive damages, because "The central spirit of the exemplary damage statute, the demand for evil motive, is violated by an award founded upon recklessness alone." (*Ibid.,* fn. omitted; on the subject of recklessness as a basis for an award of punitive damages, compare *Liodas* v. *Sahadi* (1977) 19 Cal.3d 278, 284-285 [137 Cal.Rptr. 635, 562 P.2d 316]; with *Schroeder* v. *Auto Driveaway Co.* (1974) 11 Cal.3d 908, 922 [114 Cal.Rptr. 622, 523 P.2d 662].)

■ We concur with the *Searle* observation that a conscious disregard of the safety of others may constitute malice within the meaning of section 3294 of the Civil Code. ■ In order to justify an award of punitive damages on this basis, the plaintiff must establish that the defendant was aware of the probable dangerous consequences of his

conduct, and that he wilfully and deliberately failed to avoid those consequences. (See *Searle, supra,* p. 32; Stein, *supra,* § 187, pp. 373-374.)

Relying on *Gombos* v. *Ashe, supra,* 158 Cal.App.2d 517, defendant asserts that historically the act of driving while intoxicated has never been considered "malice" under section 3294. In *Gombos,* plaintiff had alleged that defendant drove his car in a "highly reckless manner with absolute disregard and callous indifference to the rights and safety" of others, in that he became "knowingly and wilfully intoxicated" despite his knowledge that his intoxication "rendered him physically unfit" to drive safely. Despite these allegations, the court held that ". . . it is quite apparent that such facts fall short of alleging malice in fact, express or implied. One who becomes intoxicated, knowing that he intends to drive his automobile on the highway, is of course negligent, and perhaps grossly negligent. It is a reckless and wrongful and illegal thing to do. But it is not a malicious act." (P. 527.)

Plaintiff seeks to distinguish *Gombos* by stressing the additional allegations in the present complaint which include defendant's history of alcoholism, his prior arrests and convictions for drunk driving, his prior accident attributable to his intoxication, and his acceptance of employment involving the transportation of alcoholic beverages. Certainly, the foregoing allegations may reasonably be said to confirm defendant's awareness of his inability to operate a motor vehicle safely while intoxicated. Yet the essence of the *Gombos* and present complaints remains the same: Defendant became intoxicated and thereafter drove a car while in that condition, despite his knowledge of the safety hazard he created thereby. This is the essential gravamen of the complaint, and while a history of prior arrests, convictions and mishaps may heighten the probability and foreseeability of an accident, we do not deem these aggravating factors essential prerequisites to the assessment of punitive damages in drunk driving cases.

We note that when *Gombos* was decided it was unclear whether, as a general principle, an award of punitive damages could be based upon a finding of defendant's conscious disregard of the safety of others. In the evolution of this area of tort law during the ensuing 20 years it has now become generally accepted that such a finding is sufficient. Examining the pleadings before us, we have no difficulty concluding that they contain sufficient allegations upon which it may reasonably be concluded that defendant consciously disregarded the safety of others. There is a very commonly understood risk which attends every motor vehicle driver who

is intoxicated. (See *Coulter* v. *Superior Court, supra,* 21 Cal.3d 144, 152-154.) One who wilfully consumes alcoholic beverages to the point of intoxication, knowing that he thereafter must operate a motor vehicle, thereby combining sharply impaired physical and mental faculties with a vehicle capable of great force and speed, reasonably may be held to exhibit a conscious disregard of the safety of others. The effect may be lethal whether or not the driver had a prior history of drunk driving incidents.

The allowance of punitive damages in such cases may well be appropriate because of another reason, namely, to deter similar future conduct, the "incalculable cost" of which is well documented. (E.g., *Coulter, supra,* p. 154.) Section 3294 expressly provides that punitive damages may be recovered "for the sake of example." The applicable principle was well expressed in a recent Oregon case upholding an award of punitive damages against a drunken driver, "the fact of common knowledge that the drinking driver is the cause of so many of the more serious automobile accidents is strong evidence in itself to support the need for *all possible means of deterring* persons from driving automobiles after drinking, including exposure to awards of punitive damages in the event of accidents." (*Harrell* v. *Ames* (1973) 265 Ore. 183 [508 P.2d 211, 214-215, 65 A.L.R.3d 649, italics added.) According to a recent annotation, the *Harrell* case represents the view of a substantial majority of those courts of other states which have considered the matter. (See Annot. (1975) 65 A.L.R.3d 656, §§ 3-4, at pp. 661-666.) We think it also represents the better reasoned view.

We are not unmindful of the speedy legislative response to our *Coulter* holding as evidenced by the very recent enactment of Business and Professions Code section 25602, subdivisions (a) and (c), which absolve the server of alcoholic beverages, commercial or social, from any civil liability to third persons no matter how dangerous or obvious the condition of the consumer of the alcohol. In this connection, we emphasize that, in the matter before us, the issue involves imposition of potential punitive damages *on the intoxicated driver,* rather than on the third party supplier, thus distinguishing both *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151], and *Coulter, supra.* We discern no valid reason whatever for immunizing the driver himself from the exposure to punitive damages given the demonstrable and almost inevitable risk visited upon the innocent public by his voluntary conduct as alleged in the complaint. Indeed, under another recent amendment enacted following our *Coulter* decision, the Legislature has expressly

acknowledged that "the consumption of alcoholic beverages is the proximate cause of injuries inflicted upon another by an intoxicated person." (Civ. Code, § 1714, subd. (b).)

Since the filing of *Coulter* we have had the enactment of section 25602. There also has appeared a graphic illustration of the magnitude of the danger in question. In June 1978, the Secretary of Health, Education, and Welfare filed the Third Special Report to the U.S. Congress on Alcohol and Health. We take judicial notice of, and extract the following from, this extensive and very recent official study: "Traffic accidents are the greatest cause of violent death in the United States, and approximately one-third of the ensuing injuries and *one-half of the fatalities are alcohol related.* In 1975, as many as *22,926 traffic deaths involved alcohol.* Experimental studies have demonstrated that alcohol causes degeneration of driving skills and impairment of judgment. However, the full extent to which alcohol use results in traffic accidents due to these impairments is unknown. [¶] General research trends seem to support the following facts concerning the relationships of alcohol and traffic crashes: (1) As many as 25 percent of drivers in nonfatal crashes and *59 percent of drivers in fatal crashes had blood alcohol concentrations (BAC's) of 0.10 percent or higher.* (2) Up to 29 percent of passengers in fatal accidents showed BAC levels in the legally impaired range. (3) *Alcohol could be involved in up to 83 percent of pedestrian fatalities.* (4) *As many as 72 percent of drivers in single-vehicle fatalities and 51 percent of drivers in multivehicle fatalities had BAC's of 0.10 percent or higher.* (5) Of the drivers in multivehicle fatal crashes with BAC's in the high range, 44 percent were judged by researchers to be responsible for the crashes, compared to 12 percent judged not responsible. [¶] Data on alcohol involvement in crashes based on police reports indicate that the *proportion of drivers who were drinking at the time of a crash increases in relation to the severity of the crash . . . .* [¶] In general, the relative *probabilities of crash involvement and causation increase dramatically as the driver's BAC increases.*" (P. 85, italics added.)

An even more recent official confirmation of the severity of the problem has appeared, under date of February 21, 1979. The Comptroller General of the United States in his Report to the Congress, entitled "The Drinking-Driver Problem—What Can Be Done About It?" further documents the continuing tragic cost of drinking and driving.

The report begins, "Government at all levels, private organizations, and concerned citizen groups are spending millions of dollars on various drinking-driver programs, yet statistics continue to indicate that, overall,

one-half of highway fatalities in the United States are related to alcohol." (P. i.) The Government Accounting Office found that among major obstacles to successful anti-drinking-driver efforts were: "Social acceptability and use of alcohol. . . . Need for increased judicial support. . . . Need for effective methods to identify and penalize those who serve intoxicated individuals." (P. iv.) The report continues, "According to the National Safety Council. The Department of Transportation, and other sources, alcohol-related accidents now account for as much as one-half of all highway deaths—or about 25,000 persons annually—and represent an estimated annual economic cost of over $5 billion. The Department of Health, Education, and Welfare reports that the total annual economic cost from alcohol abuse is about $42 billion." (Pp. 1-2.)

It is crystal clear to us that courts in the formulation of rules on damage assessment and in weighing the deterrent function must recognize the severe threat to the public safety which is posed by the intoxicated driver. The lesson is self-evident and widely understood. Drunken drivers are extremely dangerous people.

It is argued that an alcoholic such as Stille lacks sufficient volition to control his behavior and, accordingly, that he should be excused and not penalized for his involuntary conduct. However, the question of volitional control or wilfulness is a question of fact to be determined at trial. Plaintiff's allegation that Stille is an "alcoholic," without further definition, is not conclusive on the volitional issue, for the term may well have been intended by plaintiff merely to describe one who knowingly drinks to excess.

Defendant's final contention is that many instances of simple negligent conduct not involving consumption of alcoholic beverages could also be alleged to involve a conscious disregard of the safety of others. For example, one who wilfully disobeys traffic signals or speed limit laws arguably possesses such a state of mind and culpability. That case is not before us and we express no opinion on it, holding only that one who voluntarily commences, and thereafter continues, to consume alcoholic beverages to the point of intoxication, knowing from the outset that he must thereafter operate a motor vehicle demonstrates, in the words of Dean Prosser, "such a conscious and deliberate disregard of the interests of others that his conduct may be called wilful or wanton." (*Prosser, supra,* § 2, at pp. 9-10.) Although the circumstances in a particular case may disclose similar wilful or wanton behavior in other forms, ordinarily,

routine negligent or even reckless disobedience of traffic laws would not justify an award of punitive damages.

In any event, we do not now consider whether other factual variations upon the theme herein presented would also be sufficient to withstand a demurrer. We conclude that the complaint in the present case stated a cause of action for punitive damages. To the extent that *Gombos* v. *Ashe, supra,* 158 Cal.App.2d 517, is inconsistent with the views herein expressed, it is disapproved.

Let a peremptory writ of mandate issue directing the trial court to overrule defendant Stille's demurrer.

Tobriner, J., Mosk, J., and Manuel, J., concurred.

**BIRD, C. J.**—Although I concur in the judgment of the court, I must respectfully dissent from that portion of the majority opinion which allows a cause of action for punitive damages in every case where a person has driven under the influence of alcohol. (See maj. opn., *ante,* at pp. 896-897.) The majority allow a complaint for punitive damages to be pursued on the mere allegation that an accident occurred and the driver had taken enough wine at dinner to be classified as legally under the influence of alcohol and knew that he would have to drive home. This behavior may be reckless but it is not malicious. The majority rely (*ante,* at pp. 895-896) on a decision which holds that "[t]he central spirit of the exemplary damage statute, the demand for evil motive, is violated by an award founded upon recklessness alone." (*G. D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d 22, 32 [122 Cal.Rptr. 218]; but cf. *Donnelly* v. *Southern Pacific Co.* (1941) 18 Cal.2d 863, 869-870 [118 P.2d 465] [dictum].)

Mere recklessness is not malice. Our courts have consistently refused to give punitive damages for simply driving under the influence of alcohol. "One who becomes intoxicated, knowing that he intends to drive his automobile on the highway, is of course negligent, and perhaps grossly negligent. It is a reckless and wrongful and illegal thing to do. But is not a malicious act." (*Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 527 [322 P.2d 933].)

Malice has been held to be present where a person acted with knowledge that harm to others was substantially certain or at least highly

probable. (*Schroeder* v. *Auto Driveaway* (1974) 11 Cal.3d 908, 922 [114 Cal.Rptr. 622, 523 P.2d 662]; *Seimon* v. *Southern Pac. Transportation Co.* (1977) 67 Cal.App.3d 600, 609 [136 Cal.Rptr. 787].) However, to take this idea and expand it to include a circumstance where injury to others is not certain is unwise. Persons who drive while under the influence often lack a conscious appreciation of the high risk of harm they may present to others. In contrast, in the products liability area, a person who widely markets a dangerous drug without the proper warnings is aware that injury will probably result from his acts or omissions. (*G. D. Searle & Co.* v. *Superior Court, supra,* 49 Cal.App.3d at p. 32.) The decision to drive after having taken a few drinks ordinarily does not rise to a comparable level of *conscious* indifference to the safety of others.

In this particular case the defendant is charged with repeatedly driving while intoxicated after his own experience has made him completely aware of the possible consequences of his act. Therefore, in this particular case it may be possible for a jury to conclude that "the second time was no accident."

On this limited basis, I join the majority in holding that a question of fact exists for the jury as to whether this particular defendant acted maliciously with a conscious indifference to the fact that others would probably be harmed by his actions. To go any further would surely open a Pandora's Box of punitive damages.

Newman, J., concurred.

**CLARK, J.**—I share the majority's dismay at the carnage on our highways. And if today's decision would significantly reduce the number of accidents involving drunk drivers, the majority might be justified in changing the law relating to punitive damage. However, today's decision clearly will not reduce the number of drunk drivers on our highways. We should therefore adhere to the traditional rule—enunciated in *Strauss* v. *Buckley* (1937) 20 Cal.App.2d 7 [65 P.2d 1352], and reiterated by Justice Peters in his careful and scholarly opinion in *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 526-530 [322 P.2d 933]—that driving while intoxicated does not establish the malice essential to an award of punitive damages.

Justice Peters commenced his analysis by pointing out: "Punitive damages are allowed in certain cases [for the sake of example] as a punishment of the defendant. They are not a favorite of the law and the

granting of them should be done with the greatest caution. They are only allowed in the clearest of cases." (158 Cal.App.2d at p. 526.)

## CONSIDERATIONS GOVERNING ALLOWANCE OF PUNITIVE AWARDS

The reasons for hesitancy in awarding punitive damages are obvious. First, the plaintiff is fully compensated for injury by compensatory damages. An additional award or fine from the defendant may constitute unjust enrichment. Unlike fines paid into the public treasury for public use, we may assume fines paid to private persons will not be similarly used.

Second, civil law is concerned with vindicating rights and compensating persons for harm suffered when those rights are invaded. Criminal law is concerned with punishing wrongdoers. In our tripartite system of government, the Legislature prescribes punishment for criminal conduct. (*People* v. *Tanner* (1979) 24 Cal.3d 514, 519, fn. 3 [156 Cal.Rptr. 450, 596 P.2d 328]; *In re Foss* (1974) 10 Cal.3d 910, 917 [112 Cal.Rptr. 649, 519 P.2d 1073]; *In re Lynch* (1972) 8 Cal.3d 410, 414 [105 Cal.Rptr. 217, 503 P.2d 921].) Ordinarily, the Legislature specifies the range of criminal punishment, and it is for trial judges or administrative specialists to determine the appropriate punishment within that range.

Punitive damage is awarded in the context of a civil trial. While the Legislature has provided punitive damage may be awarded in certain civil cases, it has not created standards to guide the jury in determining when such awards are justified. Consequently, punitive damage may be awarded at whim (*Brewer* v. *Second Baptist Church* (1948) 32 Cal.2d 791, 800-801 [197 P.2d 713]; *Triton Ins. Underwriters Inc.* v. *National Chiropractic Ins. Co.* (1965) 232 Cal.App.2d 829 [43 Cal.Rptr. 504]). Upon deciding to grant punitive damage, little if any guidance is given the jury as to the appropriate size of the award (cf. *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 928 [148 Cal.Rptr. 389, 582 P.2d 980]). Moreover, when the defendant's conduct also constitutes a crime for which he has been or will be punished, the punitive award constitutes double punishment—potentially in excess of the maximum punishment specified in the Penal Code and a dubious exception to the prohibition against multiple punishment. (Pen. Code, § 654.)

Third, punitive damage trials interfere with policies governing trial procedures. Punishment ordinarily serves as a deterrent to future conduct. As Justice Peters pointed out, if the plaintiff can place punitive

damages in issue, it means "that the plaintiffs can offer evidence of the financial status of the defendant. This would convert personal injury cases where intoxication or wilful misconduct are involved from the trial of a negligence case into a field day in which the financial standing of the defendant would become a major issue." (*Gombos* v. *Ashe, supra,* 158 Cal.App.2d at p. 528.)

In addition, the trier of fact assessing deterrence should be advised whether the compensatory award will come out of the defendant's pocket—thereby reducing his assets—or whether it will be paid by a liability insurer. But "Section 1155 of the Evidence Code provides that evidence of insurance is inadmissible to prove negligence or wrongdoing. The obvious purpose of the provision is to prevent the prejudicial use of evidence of liability insurance in an action against an insured. [Citation.]" (*Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880, 891 [153 Cal.Rptr. 842, 592 P.2d 329].) It is apparent that to permit punitive damages in accident cases will distract the trier of fact from its liability function, interfering with sound policies governing trial procedures.

Fourth, although situations do exist where punitive awards have a substantial deterrent effect, others exist in which deterrence is marginal at best. Because restitution only requires a wrongdoer give up his unjustified gains, compensatory damage will not always constitute deterrence. If the conduct while clearly wrongful is not criminal, a punitive award may be necessary to deter. Otherwise persons contemplating the wrongful conduct may feel they are in a no-lose situation, only gaining by the wrongful conduct. (*Ward* v. *Taggert* (1959) 51 Cal.2d 736, 743 [336 P.2d 534]; cf. *Chelini* v. *Nieri* (1948) 32 Cal.2d 480, 487 [196 P.2d 915].)

On the other hand, deterrent effect of a punitive award may be minimal or marginal where the conduct already constitutes a crime and the criminal statute is regularly and effectively enforced. Deterrence by punitive award is also marginal where wrongful conduct is as likely to result in injury to the wrongdoer as to others. (Franson, *Exemplary Damages in Vehicle Accident Cases* (1975) 50 State Bar J. 93, 148.)

In addition, if application of punitive award depends upon a fortuitous rather than an intended consequence of wrongful conduct, potential wrongdoers will not be deterred. They will simply assume the unintended consequence will not occur. This consideration has particular relevance to the instant case because the majority seek to deter drunk driving by enhancing penalty only when an accident occurs. Drunk drivers not

involved in accidents—comprising the vast majority—are not subject to the penalty. In an analogous situation, where it was urged that robbery would be deterred by applying the felony-murder rule to cases where the victim shot and killed one of the robbers, this court rejected today's majority reasoning. "An additional penalty for a homicide committed by the victim would deter robbery haphazardly at best. To 'prevent stealing, [the law] would do better to hang one thief in every thousand by lot.' (Holmes, The Common Law, p. 58.)" (*People* v. *Washington* (1965) 62 Cal.2d 777, 781 [44 Cal.Rptr. 442, 402 P.2d 130].) Similarly, if their mark is deterrence, the majority might consider Holmes' suggestion, applying the enhanced penalty to one drunk driver in every thousand chosen by lot. It is apparent that punitive damage awards will not have a significant deterrent effect in numerous situations.

Fifth, the prevalence of liability insurance in our society, requires that any evaluation of punitive damage in accident cases, especially in the context of deterrence, must consider the insurance factor.

Under the traditional view, an award of punitive damage nullifies all insurance coverage. An insurer is not liable for loss intentionally caused by the insured, and any contract providing for liability is void as being against public policy. (Ins. Code, § 533; Civ. Code, § 1668; *Tomerlin* v. *Canadian Indemnity Co.* (1964) 61 Cal.2d 638, 648 [39 Cal.Rptr. 731, 394 P.2d 571].)[1] When an insured commits an intentional injury, he cannot require his insurer to indemnify him for either punitive or compensatory damage paid under a judgment. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 278-279 [54 Cal.Rptr. 104, 419 P.2d 168]; *Abbott* v. *Western Nat. Indem. Co.* (1958) 165 Cal.App.2d 302, 304-305 [331 P.2d 997]; Keeton, Insurance Law (1971) p. 287; Note, *Insurance For Punitive Damages: A Reevaluation* (1976) 28 Hastings L. J. 431, 447; Note (1961) 49 Cal.L.Rev. 394, 396-397; see Ins. Code, § 533; Note, *The Insurer's Duty to Defend Made Absolute: Gray* v. *Zurich* (1967) 14 UCLA L.Rev. 1328, 1332.) Because punitive damage is recoverable only for malicious or other intentional injury (Civ. Code, § 3294), a punitive award traditionally exonerated the insurance company from coverage. (See Note, *Insurance for Punitive Damages: A Reevaluation, supra,* 28 Hastings L.J. 431,

---

[1]Insurance Code section 533 provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

Civil Code section 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or wilful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

447; *Maxon* v. *Security Ins. Co.* (1963) 214 Cal.App.2d 603, 616 [29 Cal.Rptr. 586]; Quint, *A Quick Look at "Wilful Misconduct"* (1965) 40 State Bar J. 481, 486.)

This rule was recently followed in *City Products Corp.* v. *Globe Indemnity Co.* (1979) 88 Cal.App.3d 31, 36-39 [151 Cal.Rptr. 494], the court concluding that malice imports wilfulness within the meaning of Insurance Code section 533, precluding insurance coverage. Although the case involved insurance company liability for punitive award only, the court relied on the code section which makes no distinction between compensatory and punitive award, and thus the decision encompasses compensatory damages. We denied a hearing on 28 February 1979.

The practical significance of the majority's opinion is not that juries may assess punitive damage in accident cases involving drunk driving, but rather the undesirable result that liability insurers will now avoid all coverage in such cases. While a few victims injured by wealthy drunk drivers will receive both compensatory and punitive damages, the many unfortunately injured by drivers without assets will be unable to recover even compensatory damages from insurers. (Quint, *A Quick Look at "Wilful Misconduct," supra,* 40 State Bar J. at p. 486.)

Because wary plaintiffs are unlikely to jeopardize carrier coverage for compensatory damage, they will not seek punitive damage unless the defendant is either wealthy or uninsured.[2] For this reason, the deterrent effect as to insured drivers who are not wealthy is further diluted.[3]

[2]Although plaintiffs who have not suffered substantial compensatory injury might seek punitive award, a "relevant yardstick" for the latter award is the amount of compensatory damages. (*Neal* v. *Farmers Ins. Exchange, supra,* 21 Cal.3d 910, 928.)

[3]Pointing out that recent decisions have expanded the meaning of malice to include some conduct not involving an intent to injure, commentators have speculated that the traditional insurance rule will be changed and the insurer will remain liable for the judgment notwithstanding that it includes punitive damages. (Note, *Insurance for Punitive Damages: A Reevaluation, supra,* 28 Hastings L.J. at pp. 448-450; Farbstein & Stillman, *Insurance for the Commission of Intentional Torts* (1969) 20 Hastings L.J. 1219, 1241-1243.)

However, a number of reasons militate against change. If drunken drivers may obtain insurance protection for losses caused by conduct warranting punitive awards the deterrent effects of both the compensatory and punitive liability is further diluted. Insurance premiums will predictably adjust to cover the risk of the punitive award, the net result of punitive allowance being that society punishes itself for the unjust enrichment of few plaintiffs. If the award cannot be covered by insurance, there is danger that many persons who use alcohol will decide that insurance is pointless, refusing to insure at all.

In any event, speculation that California will depart from its traditional rule is unreasonable in view of the recent decision in *City Products Corp.* v. *Globe Indemnity Co., supra,* 88 Cal.App.3d 31 and our denial of a hearing.

Sixth, creation of the new punitive award appears contrary to the solicitude for injured wrongdoers reflected by the recent adoption of comparative fault. (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].) A plaintiff guilty of wilful misconduct may not recover any damages against a negligent defendant (*Sissle* v. *Stefenoni* (1979) 88 Cal.App.3d 633, 636 [152 Cal.Rptr. 56]; *Paula* v. *Gagnon* (1978) 81 Cal.App.3d 680, 685-686 [146 Cal.Rptr. 702]; *Kindt* v. *Kauffman* (1976) 57 Cal.App.3d 845, 853-858 [129 Cal.Rptr. 603] [overruled on other grounds *Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389, 401, fn. 8, 404, fn. 10 (143 Cal.Rptr. 13)]). Because malice imports wilfulness, intoxicated drivers will be barred from any recovery against negligent defendants.

The foregoing six considerations suggest we adhere rigidly to Justice Peters' fundamental principle that punitive damage should be awarded with "the greatest caution" in accident cases.[4]

## MALICE

Civil Code section 3294 provides: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to actual damages, may recover damages for the sake of example and by way of punishing the defendant." Plaintiff does not claim that a punitive award may be sustained on the basis of oppression or fraud; the sole ground urged is malice.

A long line of California decisions has established that *animus malus* or evil motive is the central element of the malice required for award of punitive damages. (E.g., *Davis* v. *Hearst* (1911) 160 Cal. 143, 162-164 [116 P. 530]; *G. D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d 22, 29-31 [122 Cal.Rptr. 218] (cases collected).) Because evil motive is the central element, it is not satisfied by conduct only unreasonable, negligent, grossly negligent or reckless. (*Id.*)

Although malice may be shown by circumstantial evidence as well as by direct evidence, statutory malice traditionally requires proof of malice

---

[4]At least four states disallow any punitive damage, recognizing it is the policy of tort law to compensate victims for harm suffered and to limit defendant's obligation to indemnification. (Zuger, *Insurance Coverage of Punitive Damages* (1976) 53 N.D.L.Rev. 239, 249 (La., Mass., Neb., Wash.).) Additionally, three states hold punitive damage is compensatory in nature and limit it accordingly. (*Id.*, N.H., Mich., Conn.)

in fact, "the motive and willingness to vex, harass, annoy, or injure." (*Wolfsen* v. *Hathaway* (1948) 32 Cal.2d 632, 647 [198 P.2d 1]; *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 66 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]; *Davis* v. *Hearst, supra,* 160 Cal. 143, 162; 4 Witkin, Summary of Cal. Law (8th ed. 1974) pp. 3143-3144.)

In the absence of direct evidence of motive to vex, harass, annoy or injure, recent California decisions have recognized the requisite motive and willingness to injure in two situations based on outrageous conduct and a conscious disregard of the plaintiff's rights. In the first situation the defendant is aware both of the plaintiff and that his conduct will cause plaintiff injury. (E.g., *Neal* v. *Farmers Ins. Exch., supra,* 21 Cal.3d 910, 922-923; *Bertero* v. *National General Corp., supra,* 13 Cal.3d 43, 66; *Schroeder* v. *Auto Driveway Co.* (1974) 11 Cal.3d 908, 922 [114 Cal.Rptr. 622, 523 P.2d 662]; *Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452, 462-463 [113 Cal.Rptr. 711, 521 P.2d 1103]; *O'Hara* v. *Western Seven Trees Corp.* (1977) 75 Cal.App.3d 798, 806 [142 Cal.Rptr. 487].)

In the second situation, punitive damages have been awarded on a theory of conscious disregard of the plaintiff's rights where although injury to the plaintiff was uncertain, it was *probable* that the outrageous conduct would result in injury to someone either by maintaining a condition that would ultimately cause harm to someone (*Seimon* v. *Southern Pac. Transp. Co.* (1977) 67 Cal.App.3d 600, 607-609 [136 Cal.Rptr. 787]) or by widely distributing a known dangerous product (*G. D. Searle & Co.* v. *Superior Court, supra,* 49 Cal.App.3d 22, 32; *Toole* v. *Richardson-Merrill, Inc.* (1967) 251 Cal.App.2d 689, 713-715 [60 Cal.Rptr. 398, 29 A.L.R.3d 988]). When injury to another is the certain result of the defendant's conduct, or when injury to unidentified persons is the probable result of defendant's conduct, a defendant may be found to have intended the resulting injury.

In the absence of extraordinary circumstances, which are extremely rare (see *Ewing* v. *Cloverleaf Bowl, supra,* 20 Cal.3d 389), the evil motive requisite to punitive damage is simply not shown by driving while intoxicated. Rarely will the defendant have been drinking for the purpose of injuring someone, with knowledge that his drinking will injure the plaintiff, or even with knowledge that his drinking will probably injure someone. While driving intoxicated is dangerous, injury is not probable. Thousands, perhaps hundreds of thousands, of Californians each week reach home without accident despite their driving intoxicated.

While the majority purport to recognize that alcohol causes impairment of judgment and degeneration of driving skills (*ante,* pp. 897-898), they fail to give effect to that fact. It is rare that a person commences drinking alcohol with the intent to drive or to injure someone after becoming drunk. Rather, he typically sets out to drink without becoming intoxicated, and because alcohol distorts judgment, he overrates his capacity, and misjudges his driving ability after drinking too much. Such conduct hardly establishes the evil motive requisite to a finding of malice.

The majority today establish a new test for punitive damages. We are told that malice may be established by showing a "conscious disregard of the safety of others" and that in "order to justify an award of punitive damages on this basis, the plaintiff must establish that the defendant was aware of the *probable* dangerous consequences of his conduct, and that he wilfully and deliberately failed to avoid those consequences." (Italics added; *ante,* pp. 895-896.) But the majority are not loyal to the test as articulated—the test requires *probable* dangerous consequences. Because so many drunk drivers arrive. home without accident it is obvious that dangerous consequences—although possible and occurring with unfortunate frequency—are not probable.[5]

Although articulating a test based on probability of injury, it is apparent that the majority are not willing to apply the test. The test quickly becomes one of awareness of substantial possibility—not probability—of injury to others. In essence the test is negligence. The "real basis of negligence is not carelessness, but behavior which should be recognized as involving unreasonable danger to others." (Prosser, Law of Torts (4th ed. 1971) § 31, p. 145.) The difference between the majority test of conscious disregard of safety and the "real basis of negligence" is that under the majority test what should be recognized has been recognized—engaging in conduct known to involve an unreasonable risk of harm is conscious disregard of safety. This is a negligence standard, not a standard for determining malice and evil motive.

The majority also appear unwilling to accept the consequences of their own test. Defendant points out that wilfully disobeying traffic signals or speed limit law involves a conscious disregard of safety—under the majority's definition, malice. However, the majority tell us that "ordinar-

---

[5]Establishing the test the majority rely upon *G. D. Searle & Co. v. Superior Court, supra,* 49 Cal.App.3d 22—a case where injury would be probable—widespread distribution of a known dangerous product.

ily . . . even reckless disobedience of traffic laws would not justify an award of punitive damages." (*Ante*, pp. 899-900.)

Not only have the majority found malice on the basis of conduct traditionally deemed negligent, but they have also established a principle squarely contrary to legislative judgment in a legislative area—punishment for wrongdoing. Penal Code section 22 provides that intoxication may negate specific intent. The majority employ intoxication to establish the specific intent of malice. Today's decision is also a substantial departure from recent decisions of this court precluding and reducing punishment for those acting with impaired mental faculties. (*People* v. *Drew* (1978) 22 Cal.3d 333 [149 Cal.Rptr. 275, 583 P.2d 1318]; *People* v. *Cantrell* (1973) 8 Cal.3d 672 [105 Cal.Rptr. 792, 504 P.2d 1256].)

It is clear that today's decision represents a radical departure from prior authority in this state.[6] The majority have singled out accidents involving drunk drivers and are unwilling to apply the same principle to other cases of accidental injury. It is apparent that the only possible justification for permitting awards of punitive damages against drunk drivers is that it will substantially deter drunk driving, suggesting the problem is so great we should ignore as a matter of public policy the ordinary principles applicable to punitive awards.

### DETERRENCE

Because punitive awards against drunk drivers are necessarily limited to cases where accident has occurred, the punitive awards permitted will not substantially deter beyond existing deterrents. The law has established severe criminal penalties for drunk driving, and the accident situation is one wherein they are most effectively enforced. Additional deterrents exist. Drunk drivers like most drivers who consciously ignore safety endanger themselves and their families as well as third parties. Possibility of self-injury and injury to loved ones is a substantial deterrent as is potential liability for compensatory damages. People anticipating injury will obviously be deterred by these considerations.

---

[6]It is suggested that in other jurisdictions punitive damages may be awarded for drunk driving. (See Annot. (1975) 65 A.L.R.3d 656, §§ 3-4, at pp. 661-666.) Justice Peters, considering cases from most of the jurisdictions set forth in the annotation as imposing liability, pointed out that those jurisdictions do not have a statutory requirement of malice. (*Gombos* v. *Ashe, supra,* 158 Cal.App.2d 517, 530.) Moreover, when we add those jurisdictions that do not permit punitive damages in any case (see fn. 1) to those which have denied such damages for drunk driving, there is no majority rule.

The additional increment of deterrence created by today's decision permitting punitive awards will be marginal at best. When the punitive sanction is applicable only to unintended and unanticipated consequences of the wrongful conduct, its deterrent effect is diluted. It is further diluted when the imposition of sanction is not certain but is solely discretionary with a jury. Moreover, potential drunk drivers will probably not learn of the new punitive sanction. Because no significant deterrence is created by today's decision, allowance of punitive awards merely permits the jury to transfer funds from the defendant and his family for the unjust enrichment of the plaintiff and his family.

### Concurring Opinion

I agree with the concurring opinion's characterization of punitive damages as a "Pandora's Box" and that the decision to drive after having taken a few drinks does not show malice. (*Ante,* p. 893.) However, I cannot agree that we should fashion a key to the box out of aggravated circumstances, prior accidents and convictions. The basis for punitive damages remains malice and the aggravated circumstances relied upon by the concurring opinion fail to reflect malice. They do not reflect " 'evil motive.' " (*Ante,* p. 900.)

### Conclusion

The concurring opinion, like the majority, gives a twisted definition to malice, one that does not fit the statutory definition and does not meet any commonly accepted definition of the term. To pretend that the basis of the award is malice can only cause confusion.

Writing more than 20 years ago, Justice Peters pointed out that for more than the preceding 20 years the established rule holds that drunk driving does not warrant punitive award, and that if radical change in policy is to be accomplished, "it should be accomplished by the Legislature not by the courts." (*Gombos* v. *Ashe, supra,* 158 Cal.App.2d at p. 528.) While fully cognizant of the grave problem of drunk driving, the Legislature has not accepted the court's invitation to change the law. The Legislature may choose to respond as it did in repudiating this court's last foray to enlarge liability for drunk driving. (Stats. 1978, ch. 929 amending Bus. & Prof. Code, § 25602 and repudiating *Coulter* v. *Superior Court* (1978) 21 Cal.3d 144 [145 Cal.Rptr. 534, 577 P.2d 669].)

I share the common frustration in society's inability to eliminate or reduce the incidence of drunk driving. But I cannot join the majority's experiment, which is contrary to settled principles of law, unjust and will ultimately prove ineffective.

I would deny mandate.

The petition of the real party in interest for a rehearing was denied September 20, 1979.