Filed 1/20/21  P. v. Robledo CA1/3
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BO ROBLEDO<br><br>Defendant and Appellant. | A158002<br><br>(Contra Costa County<br>Super. Ct. No. 51817816) |

Defendant Bo Robledo, while driving under the influence of alcohol, caused a head-on collision that killed the other driver ("decedent") and resulted in permanent serious injuries to the passenger in decedent's car.  A jury found defendant guilty of second-degree murder (Pen. Code, §187, subd. (a)) and gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)), together with a true finding of two prior convictions for driving under the influence (Pen. Code, § 191.5, subd. (d)); driving under the influence (DUI) and driving with a .08 per cent blood alcohol level, causing injury within 10 years of another DUI conviction (Veh. Code, §§ 23153, subds. (a), (b), 23560), together with true findings of great bodily injury causing brain injury and paralysis (Pen. Code, § 12022.7, subd. (b));

1

and driving when privilege suspended or revoked for a DUI conviction (Veh. Code, § 14601.2, subd. (a)). He was sentenced to an aggregate term of 22 years to life.

On appeal, defendant contends the trial court made prejudicial errors by: (1) excluding evidence of decedent's acute cocaine intoxication; and (2) admitting evidence of the underlying facts of defendant's prior DUI convictions. We affirm.

**Factual and Procedural Background**

There were no witnesses to the November 2017 collision (collision) that killed decedent and caused her passenger permanent serious injuries. Consequently, the People presented their case through the expert testimony of the Sheriff's crime lab criminalist concerning defendant's alcohol intoxication, a police officer qualified as a traffic reconstruction expert, other police officers and transportation witnesses who evaluated the collision scene, and the testimony of the driver of a third car that collided with the cars involved in the primary collision (secondary collision). The traffic reconstruction expert (hereinafter "the expert") based his opinions regarding how the collision happened on the physical evidence at the site (shown to the jury in a myriad of photographs and 3D laser scanner images), the electronic data retrieved from the air bag module control in defendant's car, and the statements made by the driver involved in the secondary collision.

The People's theory, as presented through the experts and other witnesses, was that the cars were traveling in opposite directions on an unlit rural two-lane (north/south) road at almost midnight on a cold and cloudy night. The lanes were separated by "box dots" simulating a double-yellow line and there was a posted speed limit of 45 miles per

hour for both lanes.  Just south of the collision site, the northbound lane veered slightly so that a northbound driver who did not follow the curve of the road would cross over the double-yellow line into the opposing southbound lane.  The alcohol-impaired defendant was driving at an excessive speed in the northbound lane when he crossed over the double-yellow line and struck decedent's vehicle virtually head-on; at that time, decedent was driving at or below the speed limit and entirely in the southbound lane.  Seconds before the impact, defendant turned his car's steering wheel sharply to the right and hit the brakes but was unable to avoid the high-speed collision.  Decedent's car did not have a similar diagnostic air bag module control, but it was estimated her car was traveling at a speed no greater, and likely less, than 45.9 miles per hour and she had not been driving in any fashion that contributed to the collision.

After the collision both vehicles were "completely destroyed" and they came to rest entirely in the southbound lane, with car debris strewn in both lanes.  The secondary collision occurred when the driver of a third vehicle traveling in the southbound lane came upon the wreckage but was unable to stop before striking both cars.  There was no evidence that the secondary collision contributed to decedent's death or passenger's injuries.

Defendant did not testify or present any evidence.

3

## DISCUSSION

### I.  Exclusion of Evidence of Decedent's Acute Cocaine Intoxication

#### a.  *Relevant Facts*

The People filed motions in limine under Evidence Code sections 350 and 352[1] to exclude evidence that decedent was driving under the influence of cocaine (described in the autopsy report as an acute cocaine intoxication).  Defendant opposed, arguing that the collision necessarily called into question decedent's driving skills and acute cocaine intoxication would adversely affect her ability to drive.  Defendant did not seek to present its own expert, but instead asked to question the prosecution's criminalist from the Sheriff's crime lab as well as the traffic reconstruction expert.  In response, the prosecutor informed the court that no criminalist was prepared to testify as to the probable effects of decedent's acute cocaine intoxication on her driving skills and no prosecution witness was prepared to testify that decedent had done anything other than drive at or below the speed limit within her own traffic lane.

The trial court tentatively ruled it would exclude evidence of decedent's acute cocaine intoxication as not relevant and prejudicial.  However, the court was amenable to a section 402 hearing at which time it would consider any proposed testimony regarding the effect of

---

[1]     All further undesignated statutory references are to the Evidence Code.  Section 350 reads: "No evidence is admissible except relevant evidence."  Section 352 reads:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

decedent's acute cocaine intoxication on her driving skills and the extent to which it may have contributed to the collision. Thereafter, at the joint request of the parties, the trial court held a section 402 hearing at which the sole witness was the prosecution's traffic reconstruction expert, Police Officer Lee Lawrence. The officer opined that decedent's driving had not contributed in any way to the collision. When asked to explain, the witness stated decedent was "driving like she should have," and if her vehicle was in her traffic lane then it would not have any causal effect on a collision due to defendant's vehicle crossing into the oncoming traffic lane.

At the conclusion of the section 402 hearing, defendant renewed his request to admit the evidence of decedent's acute cocaine intoxication. The trial court again tentatively refused to admit the evidence, stating, "Without there being some connection between the cocaine that was detected in [the victim's] system and the cause of this collision, I do not believe that the fact that cocaine was detected is relevant to the issues in this case." The court also found the evidence would be "highly prejudicial" as it would impugn decedent's character without having any bearing on what caused the collision. Nonetheless, the court stated it would reconsider its ruling "if there's some other evidence that you learn of or have an expert or witness who will provide relevant testimony to that issue, I would allow you to ask for a further hearing on the issue." (Italics added.) Defense counsel made no further effort to renew his request to admit evidence of decedent's acute cocaine intoxication and did not later ask for another section 402 hearing.

### b.    *Analysis*

Defendant challenges the trial court's in limine rulings excluding evidence of the decedent's acute cocaine intoxication on two grounds: (1) the trial court erred when it excluded the evidence on the basis that the defense would not be calling an expert, asserting that no expert testimony is needed to establish the "rather elementary" and "irrefutable" proposition that "being under the influence of cocaine adversely affects a person's driving skills;" and (2) defense counsel made an adequate offer of proof that "fully satisfied any requirement to use expert testimony," by proposing to call as his witness the prosecution's designated criminalist from the Sheriff's crime lab and question her concerning the probable impact of decedent's acute cocaine intoxication on her driving skills.  Neither contention warrants reversal.

First, we reject defendant's contention that the evidence of decedent's acute cocaine intoxication was admissible in the absence of expert testimony that would explain the probable impact of acute cocaine intoxication on decedent's driving skills at the time of the collision.  While "ingestion of intoxicating substances is generally known to alter a person['s] perception and behavior to some degree[,] the precise degree of alteration, or the precise effects that are likely to be associated with a particular amount of cocaine, however, is not something that is generally known and would require expert testimony."  (*Lopez v. Banuelos* (2014 E.D. Cal.) 2014 U.S. Dist. Lexis 46420 at p.*9; see *People v. Balderas* (1985) 41 Cal.3d 144, 191 ["[e]vidence of habitual narcotics or alcohol use is not admissible to impeach perception or memory unless there is expert testimony on the

6

probable effect of such use on those facilities"]; *Hernandez v. County of Los Angeles* (2014) 226 Cal.App.4th 1599, 1614 ["[w]here the complexity of the causation issue is beyond common experience, expert testimony is required to establish causation," and " '[t]he probable effect of intoxicants other than alcohol is a topic "sufficiently beyond [the] common experience" of most jurors that expert testimony is required' "]; *People v. Cox* (1990) 221 Cal.App.3d 980, 989 (*Cox*) [expert testimony is required to determine the potential impact of methamphetamine on defendant's conduct; "[i]t is indeed possible that there are those in our society who know full well the effects of the use of various drugs on the human system," but . . . "the ordinary juror probably does not have such knowledge"].) Accordingly, we see no reason to reverse based on this claim of error. In the absence of expert testimony connecting decedent's acute cocaine intoxication with her driving skills, " '[t]he inference[s] which defendant [sought] to have drawn from the [evidence would have been] clearly speculative, and evidence which produces only *speculative* inferences is *irrelevant* evidence,' " inadmissible under section 350. (*People v. Babbitt* (1988) 45 Cal.3d 660, 682, italics in original; see *Cox, supra,* 221 Cal.App.3d at pp. 989-990 ["[b]ased on the lack of expert testimony in this case, it would have been pure speculation for the jurors to determine what impact the ingestion of an undermined amount of methamphetamine might have had on [the defendant's] mental capabilities"]; see also *People v. Kelly* (1992) 1 Cal.4th 495, 523 [trial court properly disallowed, as irrelevant, proposed testimony of autopsy pathologist regarding the amount of alcohol or cocaine in the victims' systems; trial court is "not required to admit evidence that merely makes the victim of a crime look bad;" and

evidence of victims' "substance abuse, without more, would be meaningless to a jury's consideration of the victims' conduct"].)

Second, we reject defendant's argument that the trial court erroneously precluded him from presenting expert testimony on the topic of decedent's acute cocaine intoxication. The record shows that, at the in limine hearing, the court made it quite clear to defense counsel that the defense did not have to call its own expert but could call and question the prosecution's criminalist on the probable impact of acute cocaine intoxication on decedent's driving skills on the night of collision. The court's only limitation was that the proposed testimony would first have to be presented for the court's consideration at a section 402 hearing outside the presence of the jury, to which defense counsel lodged no objection. At the conclusion of the section 402 hearing, the court again informed defense counsel that its in limine ruling excluding the evidence would be reconsidered, "of course," if defense counsel proposed any additional expert or witness who was prepared to give relevant testimony.

We see nothing in the court's comments to dissuade defense counsel from asking the court to conduct another section 402 hearing when the prosecution called its criminalist at trial. Because defense counsel did not do so, defendant has forfeited any contention that the court's in limine ruling was in error on that basis. (See *People v. Smith* (2003) 30 Cal.4th 581, 632 [because defendant failed to renew request to admit certain evidence for specific reasons, he "may not now argue on that basis that its exclusion was error," citing § 354]; see also *People v. Morris* (1991) 53 Cal.3d 152, 190 [a pretrial or in limine motion preserves an evidentiary issue only if, among other things, "the motion

8

is made at a time before or during the trial when the trial judge can determine the evidentiary question in its appropriate context"].)

## II. Admission of Underlying Facts of Defendant's Prior DUI Convictions

### a. *Relevant Facts*

The People moved in limine to admit, and defendant moved in limine to exclude, evidence of defendant's two prior DUI convictions including the facts leading to his arrests in 2006 (at the age of 21) and 2012 (at the age of 28). The court ruled the testimony concerning the prior DUI convictions including the underlying facts would be allowed as the evidence was relevant to prove the elements of intent and knowledge necessary to support a vehicular second-degree murder charge under *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*) and *People v. Ortiz* (2003) 109 Cal.App.4th 104 (*Ortiz*), and the evidence would not be otherwise unduly prejudicial.

Police Officer Christopher Anaya testified regarding defendant's 2006 DUI arrest following a one-car collision. When the police arrived at the scene, defendant's car was lying on its side after striking three trees lining a road. Defendant's car was "completely total[ed]" with "really extensive damage" mostly to the passenger side of the car that struck the trees; and the front bumper and parts of the molding and paneling had also fallen off the car. Without objection, the officer testified he was not able to estimate the speed of defendant's car, but opined that defendant was driving at a "high rate of speed". Defendant was found sitting on the street curb. His eyes were red, bloodshot, and watery; there was a strong smell of alcohol, and when he stood up he was unsteady on his feet. After defendant was only able to partially

9

perform field sobriety tests due to his intoxication, the officer terminated the tests and arrested him. The jury also heard evidence that following the 2006 arrest defendant was convicted of driving under the influence of alcohol.

Police Officer Romey Alvarez testified concerning the 2012 DUI arrest. In response to a dispatch report, the officer arrived at the scene and found defendant sitting in the driver's seat of a car stopped in a road; the car engine was on and the keys were in the ignition. Defendant looked like he was "passed out" – his head was tilted to his shoulder and eyes were "really droopy" and "half closed." The officer verbally woke defendant and asked him if he was okay. After a while defendant said he was waiting for the car (actually a truck) in front of him to move past the stop sign. Defendant denied drinking, but he smelled of alcohol, was slurring his words, and his eyes were bloodshot. Based on defendant's performance of field sobriety tests, the officer concluded defendant was under the influence ("[h]e was drunk") and arrested him. At the police station, defendant consented to breath tests; his first breath test registered .29 and .27, and his second breath test registered .28 and .29, with the tests showing an alcohol level over the legal limit of .08. The jury also heard evidence that following the 2012 arrest defendant was convicted of driving with a blood alcohol level greater than 0.08.

### b.    *Analysis*

Defendant does not challenge the trial court's ruling allowing the jury to hear evidence that he had sustained prior DUI convictions, but contends the court abused its discretion in allowing introduction of the underlying facts. We see no merit to this claim of error.

10

The law governing the admission of prior convictions, including the underlying facts, is well settled. "Evidence that a person committed a crime . . . may be admitted, . . . not to prove a person's predisposition to commit such an act, but rather to prove some other material fact, such as that person's intent or [knowledge]." (*People v. Harris* (2013) 57 Cal.4th 804, 841 (*Harris*), citing § 1101, subd. (b).) The evidence of the prior crimes "must be relevant to prove a fact at issue (Evid. Code, § 210), and its admission must not be unduly prejudicial, confusing, or time consuming (Evid. Code, § 352)." (*People v. Leon* (2015) 61 Cal.4th 569, 597-598.) Reviewing the trial court's admission of the underlying facts of the two prior DUI convictions for an abuse of discretion (*Harris*, *supra*, at p. 841), we see none.

Relying on *Watson*, *supra*, 30 Cal.3d. 290, and *Ortiz*, *supra*, 109 Cal.App.4th 104, the trial court reasonably found that the underlying facts of the prior DUI convictions were highly probative as the evidence would tend to support the prosecution's theory that defendant possessed the requisite implied malice mental state and knowledge elements necessary to sustain a vehicular second-degree murder charge. As the *Ortiz* court explained, since *Watson* was decided in 1981, the courts "have recognized repeatedly that a motor vehicle driver's previous encounters with the consequences of recklessness on the highway – whether provoked by the use of alcohol, of another intoxicant, by rage, or some other motivator – sensitizes him to the dangerousness of such life-threatening conduct." (*Ortiz*, *supra*, at p. 112.) And, from such prior recklessness, "through a series of inferences, a jury could conclude that, at the time of the *charged* misconduct, the defendant possessed a 'wanton disregard for life, and . .

11

. a subjective awareness of the risk created,' from which 'malice may be implied,' " to support a vehicular second-degree murder conviction. (*Id.* at p. 113, italics in original, quoting, in part, *Watson, supra,* at p. 298.)

In challenging the trial court's ruling, defendant argues the nature of the 2006 and 2012 arrests did not show his subjective knowledge of the dangers created by drunk driving. As to the 2006 arrest, defendant complains the jury should not have heard testimony that he was speeding because his car would have been badly damaged if it struck three trees "at almost any speed." As to the 2012 arrest, defendant complains that the fact that he fell asleep and was passed out behind the wheel shows that he was not conscious; therefore, he could not have been aware of anything, including the dangers of drunk driving. We find these arguments unavailing.

It is well settled that a person " 'who wilfully consumes alcoholic beverages to the point of intoxication, knowing that he thereafter must operate a motor vehicle, thereby combining sharply impaired physical and mental faculties with a vehicle capable of great force and speed, reasonably may be held to exhibit a conscious disregard of the safety of others.' " (*Watson*, *supra*, 30 Cal.3d at pp. 300-301, quoting *Taylor v. Superior Court* (1979) 24 Cal.3d 890, 897; *People v. Brogna* (1988) 202 Cal.App.3d 700, 709 (*Brogna*) ["[o]ne who drives a vehicle while under the influence after having been convicted of that offense knows better than most that his conduct is not only illegal, but entails a substantial risk of harm to himself and others"]; see *Ortiz, supra*, 109 Cal.App.4th at p. 115 ["[a] jury is entitled to infer that regardless of the mental state or condition that accompanies an instance of reckless driving— whether intoxication, rage, or willful irresponsibility—the driver's

12

subsequent apprehension and prosecution for that conduct must impart a knowledge and understanding of the personal and social consequences of such behavior"].)

Despite defendant's arguments to the contrary, his "requisite mental state" – "one supporting a subsequent finding of an awareness of the dangers of [drunk driving] – was not formed [at the time of his arrests] so *much as before and after the resulting traffic incident[s]."* (*Ortiz, supra,* 109 Cal.App.4th at p. 113; italics added.)  In 2006, defendant drank, drove, and struck three trees with such force that his car flipped over.  In 2012, he again drove while intoxicated and was found asleep at the wheel of his running car behind another vehicle at a stop sign.  These incidents provide ample evidence from which the jury could reasonably infer that defendant was subjectively aware of what can happen when one drives drunk and showed a conscious disregard for the safety of himself and others.  Accordingly, we find no abuse of discretion in the trial court's ruling that the underlying facts of the prior DUI convictions were admissible as the evidence did possess "substantial relevance on the issues of knowledge and conscious disregard raised by the charge of second degree murder." (*Brogna, supra,* 202 Cal.App.3d at p. 710.)

Lastly, we see no abuse of discretion in the trial court's ruling that the probative value of the underlying facts of the prior DUI convictions was not outweighed by the substantial danger of undue prejudice under section 352.  The factual circumstances clearly tended to demonstrate defendant was subjectively aware of the consequences of drunk driving and showed a conscious disregard for the safety of himself and others.  Weighed against the high probative value of the

13

evidence, any prejudice was minimal. Indeed, the testimony concerning the arrests was far less inflammatory " 'than the testimony concerning the charged offenses,' " making it " 'unlikely . . . that the jury's passions were inflamed' " by the challenged evidence. (*Ortiz*, *supra*, 104 Cal.App.4th at p. 118, quoting *People v. Ewoldt* (1994) 7 Cal.4th 380, 405.) "Moreover, defendant had been punished – via convictions – for the prior [DUI arrests] introduced before the jury," thereby minimizing the chance that the jury " 'would punish [him] for the prior offense[s], for which he had already been punished.' " (*Ortiz*, *supra*, at p. 118, quoting *People v. Kelley* (1997) 52 Cal.App.4th 568, 579.)

## III. No Cumulative Error

Defendant contends reversal is required because the "cumulative prejudice" of the purported evidentiary errors violated his due process rights to a fair trial under the 5th and 14th Amendments. "Because defendant has failed to demonstrate any error, there is no prejudicial cumulative effect." (*People v. Covarrubias* (2016) 1 Cal.5th 838, 910.)

## DISPOSITION

The judgment is affirmed.

_____
Petrou, J.

WE CONCUR:


_____
Fujisaki, Acting P.J.


_____
Jackson, J.

_People v. Robledo/A158002_

15