[No. F044634. Fifth Dist. Dec. 16, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN EDGAR ERIBARNE, Defendant and Appellant.

## COUNSEL

Deborah Prucha, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, and Clayton S. Tanaka, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**DAWSON, J.**—Proposition 36, also known as the Substance Abuse and Crime Prevention Act of 2000 (the Act), was approved by the voters of California on November 7, 2000.[1] It requires, with certain exceptions, that "any person convicted of a nonviolent drug possession offense shall receive probation" and "[a]s a condition of probation the court shall require participation in and completion of an appropriate drug treatment program." (Pen. Code, § 1210.1, subd. (a).)[2] For those offenders who qualify for Proposition 36 probation and drug treatment, "[a] court may not impose incarceration as an additional condition of probation." (§ 1210.1, subd. (a).) The Act excludes five listed categories of nonviolent drug possession offenders from Proposition 36 probation. (§ 1210.1, subd. (b)(1)–(5).) The first of these five categories is: "[a]ny defendant who previously has been convicted of one or more serious or violent felonies in violation of subdivision (c) of Section 667.5 or Section 1192.7, unless the nonviolent drug possession offense occurred after a period of five years in which the defendant remained free of both prison custody and the commission of an offense that results in (A) a felony conviction other than a nonviolent drug possession offense, or (B) a misdemeanor conviction involving physical injury or the threat of physical injury to another person." (§ 1210.1, subd. (b)(1).) Appellant John Edgar Eribarne's current nonviolent drug possession offense apparently occurred within five years of his commission of a misdemeanor offense of driving with a blood-alcohol level of 0.08 percent or higher (Veh. Code, § 23152, subd. (b)).[3]

---

[1] "Proposition 36 is codified in Penal Code sections 1210, 1210.1, and 3063.1 and Health and Safety Code section 11999.4 et seq." (*People v. Canty* (2004) 32 Cal.4th 1266, 1273, fn. 1 [14 Cal.Rptr.3d 1, 90 P.3d 1168].)

[2] All further statutory references are to the Penal Code unless otherwise noted.

[3] It is the "commission of" the disqualifying offense within the five-year, so-called washout period of section 1210.1, subdivision (b)(1) that disqualifies the defendant from Proposition 36 probation, and not the date on which the defendant was subsequently convicted of that disqualifying offense. (*Moore v. Superior Court* (2004) 117 Cal.App.4th 401, 403–404 [12 Cal.Rptr.3d 383].) The record on this appeal does not reveal when appellant actually committed the Vehicle Code section 23152, subdivision (b) offense. We know only that he was charged with it on October 8, 1998, and convicted of it on November 9, 1998. The parties to this appeal assume that because appellant was charged with the Vehicle Code section 23152,

In this case we address the following issue: does a misdemeanor conviction for driving with a blood-alcohol level of 0.08 percent or higher constitute "a misdemeanor conviction involving . . . the threat of physical injury to another person" within the meaning of section 1210.1, subdivision (b)(1)? If the answer is no, as appellant contends, then appellant qualifies for Proposition 36 probation and drug treatment. If the answer is yes, as respondent contends, then appellant is ineligible for Proposition 36 probation and drug treatment. As we shall explain, the answer is yes.

## FACTS

Appellant was convicted of first degree burglary (§§ 459, 460) in 1974. Between 1971 and 1995 inclusive, he incurred 18 other criminal convictions. On October 8, 1998, he was charged with driving with a blood-alcohol level of 0.08 percent or higher (Veh. Code, § 23152, subd. (b).)[4] He was convicted of this crime on November 9, 1998. On September 9, 2003, he was charged with possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a).) The complaint alleged that he committed this offense on or about September 5, 2003.

On October 1, 2003, appellant entered a plea of guilty to the methamphetamine possession charge and admitted that he had incurred the alleged 1974 "strike" conviction. On November 10, 2003, appellant was sentenced to 32 months in prison. This was calculated as the low term of 16 months, doubled pursuant to section 667, subdivision (e)(1) because of appellant's 1974 serious felony conviction.

---

subdivision (b) offense on October 8, 1998, the "commission of" (Pen. Code, § 1210.1, subd. (b)) that offense was on or very shortly before October 8, 1998. Thus, when appellant's current "nonviolent drug possession offense occurred" (§ 1210.1, subd. (b)) on or about September 5, 2003, it occurred within five years of his "commission" of the Vehicle Code offense. For purposes of this appeal, we will make the same assumption. We note that if appellant's "commission of" the Vehicle Code offense had occurred on or before September 4, 1998, that offense would not have disqualified him from Proposition 36 probation even if his subsequent conviction for that offense occurred within five years of his September 5, 2003, possession of methamphetamine offense. (*Moore v. Superior Court, supra,* at pp. 403–404.)

[4] Vehicle Code section 23152, subdivision (b) states: "It is unlawful for any person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle. [¶] For purposes of this article and Section 34501.16, percent, by weight, of alcohol in a person's blood is based upon grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath. [¶] In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving."

## ANALYSIS

Appellant argues that the court erred in not sentencing him to Proposition 36 probation because "appellant was not shown by the evidence before the court at sentencing . . . to have a misdemeanor conviction involving physical injury or a threat of physical injury to another . . . ." He argues that proof of a violation of Vehicle Code section 23152, subdivision (b) "requires absolutely no proof that there was any driving that endangered the physical safety of others." The flaw in this argument is that the very reason why driving with a blood-alcohol level of 0.08 percent or higher has been criminalized is precisely because such conduct presents a threat of physical injury to other persons. "In proscribing *driving* while under the influence, the statute's legislative purpose is to *protect the public* and guard against the threat of injury to others." (*People v. Canty, supra*, 32 Cal.4th at p. 1279.) "[A] person who is driving while under the influence of alcohol and/or drugs is always a threat and the purpose of [Vehicle Code] section 23152 is to prohibit those 'extremely dangerous' persons from driving anywhere in California." (*People v. Malvitz* (1992) 11 Cal.App.4th Supp. 9, 14 [14 Cal.Rptr.2d 698].) "In an attempt to address the continuing threat to public safety posed by drinking drivers, in 1981 the Legislature retained the 'driving under the influence' statute, renumbered it [Vehicle Code] section 23152, subdivision (a), and added the statute at issue here, [Vehicle Code] section 23152, subdivision (b) . . . ." (*Burg v. Municipal Court* (1983) 35 Cal.3d 257, 264 [198 Cal.Rptr. 145, 673 P.2d 732].)

To the extent appellant might be contending that some additional evidentiary showing is required in order to demonstrate that a misdemeanor violation of Vehicle Code section 23152, subdivision (b) constitutes "a misdemeanor conviction involving physical injury or the threat of physical injury to another person" (Pen. Code, § 1210.1, subd. (b)(1)), we reject that contention.

"In interpreting a voter initiative . . . , we apply the same principles that govern statutory construction. [Citation.] Thus, 'we turn first to the language of the statute, giving the words their ordinary meaning.' [Citation.] The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. [Citation.] When the language is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' [Citation.]" (*People v. Rizo* (2000) 22 Cal.4th 681, 685 [94 Cal.Rptr.2d 375, 996 P.2d 27].) In other words, "our primary purpose is to ascertain and effectuate the intent of the voters who passed the initiative measure." (*In re Littlefield* (1993) 5 Cal.4th 122, 130 [19 Cal.Rptr.2d 248, 851 P.2d 42]; accord, *People v. Briceno* (2004) 34 Cal.4th 451, 459 [20 Cal.Rptr.3d 418, 99 P.3d 1007].) A law enacted by the voters " 'unlike the

acts of our legislature, owes its whole force and authority to its ratification by the people; and they judged of it by the meaning apparent on its face according to the general use of the words employed where they do not appear to have been used in a legal or technical sense.' " (*Miller v. Dunn* (1887) 72 Cal. 462, 465–466 [14 P. 27]; accord, *Kaiser v. Hopkins* (1936) 6 Cal.2d 537, 538 [58 P.2d 1278]; *Keller v. Chowchilla Water Dist.* (2000) 80 Cal.App.4th 1006, 1010–1011 [96 Cal.Rptr.2d 246].)

■ The word "threat" is commonly understood to mean "something that by its very nature or relation to another threatens the welfare of the latter." (Webster's 3d New Internat. Dict. (1986) p. 2382.) We think a voter reading the statutory language and ascribing to that language "the meaning apparent on its face according to the general use of the words employed" (*Miller v. Dunn, supra,* 72 Cal. at p. 465) would deem a misdemeanor conviction for driving with a blood-alcohol level of 0.08 percent or higher (Veh. Code, § 23152, subd. (b)) to be "a misdemeanor conviction involving . . . the threat of physical injury to another person." (§ 1210.1, subd. (b)(1).) "[I]n the years 1976 to 1980 there were many more injuries to California residents in alcohol-related traffic accidents than were suffered by the entire Union Army during the Civil War, and more were killed than in the bloodiest year of the Vietnam War." (*Burg v. Municipal Court, supra,* 35 Cal.3d at p. 262.) It is commonly understood that "[d]runken drivers are extremely dangerous people." (*Taylor v. Superior Court* (1979) 24 Cal.3d 890, 899 [157 Cal.Rptr. 693, 598 P.2d 854].) The word "threat" is also commonly understood to include "an expression of an intention to inflict evil, injury, or damage on another usu. as retribution or punishment for something done or left undone." (Webster's 3d New Internat. Dict., *supra,* at p. 2382.) Appellant makes no contention that the words "a misdemeanor conviction involving . . . the threat of physical injury to another person" necessarily require a verbally expressed "threat" (or a "threat" in writing) to cause physical injury to another person. Although that type of threat would appear to qualify as one type of "threat of physical injury to another person," the statutory language does not limit itself to any particular type of "threat of physical injury to another person."

Nor do we see anything in the Secretary of State's official ballot pamphlet for the November 2000 election that would appear to have suggested to any voter that a misdemeanor violation of Vehicle Code section 23152, subdivision (b) would not be deemed "a misdemeanor conviction involving . . . the threat of physical injury to another person" as those words would be commonly understood by voters.[5]

---

[5] The ballot pamphlet stated in pertinent part: "In addition, offenders with one or more violent or serious felonies on their record, and thus subject to longer prison sentences under the Three Strikes law, would not be sentenced under this measure to probation and drug treatment, unless certain conditions existed. Specifically, during the five years before he or she committed

## OTHER ISSUES

Before briefing the Proposition 36 issue addressed above, appellant's counsel submitted a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071] asking this court to independently review the record. This court then addressed a letter to appellant advising him of his option to submit to this court "a letter stating any grounds on appeal which you want this court to consider." Appellant then did submit such a letter. In it he attempts to raise two issues. They are not clearly articulated, but appear to be (1) that his current sentence as a second striker (i.e., the doubling of his current sentence due to his 1974 "strike") illegally punishes him twice for his 1974 conviction, and (2) that the court erred in refusing his request that the court strike his 1974 conviction pursuant to section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628].

■ We rejected appellant's first contention in *People v. White Eagle* (1996) 48 Cal.App.4th 1511 [56 Cal.Rptr.2d 749], where we observed that "[r]ecidivist statutes do not impose a second punishment for the first offense in violation of the double jeopardy clause of the United States Constitution. (*Moore v. Missouri* (1895) 159 U.S. 673, 677 [40 L.Ed. 301, 16 S.Ct. 179].)" (*Id.* at p. 1520.) As the court stated in *Monge v. California* (1998) 524 U.S. 721, 728 [141 L.Ed.2d 615, 118 S.Ct. 2246]: "An enhanced sentence imposed on a persistent offender . . . 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes' but as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.' [Citations.]"

Nor can we conclude, in view of appellant's 19 prior criminal convictions, that the trial court's refusal to strike his 1974 serious felony conviction was "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377 [14 Cal.Rptr.3d 880, 92 P.3d 369].) In refusing appellant's request, the court noted that in the preceding 20 years appellant had been continuously in trouble with the law except for a brief period of about three years from 1995 to 1998. He could hardly be " 'deemed outside the [three strikes law] scheme's spirit, in whole or in part . . . .' " (*Ibid.*)

a nonviolent drug possession offense, the offender (1) had not been in prison, (2) had not been convicted of a felony (other than nonviolent drug possession), and (3) had not been convicted of any misdemeanor involving injury or threat of injury to another person." (Ballot Pamp., Gen. Elec. (Nov. 7, 2000) analysis of Prop. 36 by Legislative Analyst, pp. 23–24.)

Although this language does not accurately paraphrase the statute insofar as the timing of the commission of disqualifying offenses is concerned (see fn. 3, *ante*, and *Moore v. Superior Court, supra*, 117 Cal.App.4th at pp. 403–404), the Legislative Analyst apparently saw no need to elaborate on the meaning of the word "threat."

## DISPOSITION

The judgment is affirmed.

Levy, Acting P. J., and Cornell, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 30, 2005.