Filed 5/31/23  P. v. Lin CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>YONGZHI LIN,<br><br>　　　Defendant and Appellant. | A164923<br><br>(San Mateo County Super. Ct. Nos. 20NF001413A, 21NF06871A)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]** |

**BY THE COURT:**

Appellant's petition for rehearing is denied and the opinion filed herein on May 12, 2023 is modified as follows:

On page 14, in the last paragraph, after the word "occurred," add as footnote 5 the following footnote, which will require renumbering of the subsequent footnote:

> [5] Lin seeks rehearing, arguing that we should have considered an argument under section 745, subdivision (a)(2) rather than subdivision (a)(4)(A).  Subdivision (a)(2), however, has nothing to do with Lin's situation.  It provides: *"During the defendant's trial*, in court and during the proceedings, the judge, an attorney in the case, a law enforcement officer involved in the case, an expert witness, or juror, used racially discriminatory language about the defendant's race, ethnicity, or national origin,

1

or otherwise exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin, whether or not purposeful." (§ 745, subd. (a)(2), italics added.) Of course, Lin did not go to trial and bringing a motion under subdivision (a)(2)—which applies to conduct in court during a trial—would have been frivolous.

The petition for rehearing filed in *In re Lin on Habeas Corpus* (A166239) is also denied.

There is no change in the judgment.

Dated: _____                    _____

Stewart, P.J.

2

Filed 5/12/23  P. v. Lin CA1/2 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>YONGZHI LIN,<br><br>    Defendant and Appellant. | A164923<br><br>(San Mateo County Super. Ct.<br>Nos. 20NF001413A, 21NF06871A) |

After pleading no contest to a charge of robbery and admitting that he had violated his probation, the trial court sentenced defendant Yongzhi Lin to a four-year prison term, enhanced by the "Three Strikes" law.  Lin argues that the trial court abused its discretion by denying his motion pursuant to Penal Code section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 to dismiss an earlier conviction for robbery, which triggered the Three Strikes enhancement.  Lin also claims that his trial counsel ineffectively represented him by not filing a motion under the California Racial Justice Act of 2020 (CRJA) (Pen. Code, § 745).[1]  Lin contends the motion would have been successful because his status as a Cantonese

_____

[1] All further statutory references are to the Penal Code unless otherwise stated.

1

speaker precluded his participation in a drug rehabilitation program, foreclosing probation.[2]  Finding no error, we affirm the judgment.

## BACKGROUND

On December 12, 2019, a loss prevention officer at Macy's in San Mateo caught Lin attempting to leave the store with approximately $1,000 worth of merchandise from the store.  Lin resisted initial efforts to detain him.

On May 5, 2020, Lin was convicted of second degree robbery (§ 212.5, subd. (c)) and was placed on three years' probation, subject to various terms and conditions, including that he advise the probation department about his whereabouts and that he obey all laws.  Between September 2020 and November 2020, however, Lin failed to keep the probation department apprised of his whereabouts.

Lin was arrested on four occasions (September 2, October 8, November 23, and November 25, 2020) in connection with 11 criminal offenses, including:  four acts of unlawful possession of prescription drugs (Health & Saf. Code, § 11350, subd. (a)); two instances of unlawful possession of drug paraphernalia (Health & Saf. Code, § 11364); two instances of resisting arrest (§ 148, subd. (a)(1)); shoplifting (§ 490.2); petty theft (§ 488); and possession of burglary tools (§ 466).

On June 7, 2021, a loss prevention officer at Draeger's Market saw Lin put four bottles of wine in his backpack and leave the store.  The officer, while identifying himself, attempted to stop Lin outside.  Lin pushed the loss prevention officer and elbowed him.  Lin ended up falling to the ground

---

[2] Lin raises the same ineffective assistance of counsel claim and also seeks relief under the CRJA in a petition for writ of habeas corpus (A166239), which we consider concurrently with this appeal.  We are issuing a separate order denying the habeas petition to be filed on the same date as this opinion.

where the officer was able to hold him. Lin tried to bite the loss prevention officer and struck him in the face.

On July 6, 2021, the San Mateo County District Attorney filed an information charging Lin with one count each of second degree robbery (§ 212.5, subd. (c)), misdemeanor shoplifting (§ 490.2), and misdemeanor possession of drug paraphernalia (Health & Saf. Code, § 11364). The information further alleged that Lin's prior robbery conviction in 2020 constituted a prior strike conviction (§§ 667, subd. (d), 1170.12, subd. (b)) and prior serious felony (§ 667, subd. (a)(1)) under the Three Strikes law.

On December 23, 2021, Lin pleaded no contest to the robbery charge and admitted the prior strike conviction in return for dismissal of all other charges and enhancements, and a four-year potential maximum prison sentence. Lin reserved the right to have the trial court consider a *Romero* motion. On that same date, Lin admitted that his robbery conviction violated his probation in case No. 20NF001413A in return for the dismissal of all other probation violation allegations.

Following his plea, Lin submitted a sentencing brief asking the trial court to dismiss his prior strike conviction and grant him probation. Lin argued that his second robbery was "on the lower end of the spectrum for robbery," that both of his robberies "were the result of his florid heroin and cocaine addiction," and that he "had expressed remorse and culpability for his conduct." Lin also represented his willingness to seek drug treatment, but he blamed his failure to undergo such treatment to that point on "the dearth of effective and meaningful drug treatment options available to Cantonese-speaking individuals who cannot also speak English."

In opposition, the prosecutor argued that not only had Lin been on probation for just over a year when he committed his second robbery, but he

3

had violated his probation in multiple ways even before the June 2021 robbery. The prosecutor noted that in his second robbery, Lin pushed and struck the loss prevention officer in the face, leaving him in physical pain. In his first robbery, Lin physically resisted store loss prevention officers when they tried to stop him from stealing merchandise. And in between those robberies, Lin threatened to kill loss prevention officers who had pursued him after another theft.[3] In addition to those "repeated acts of criminality," the prosecutor noted Lin's "refusal to enter a treatment program to combat his decades long drug use," which "squarely place[d] [Lin] within the Three Strikes sentencing scheme."

The trial court also received a probation report that included Lin's history with substance abuse. Lin had informed the probation officer that he had been using heroin for the preceding "two to three years" and cocaine for the preceding year. Lin told the officer that "he was in a residential treatment program for one day," but "he could not recall when he attended the program, as well as the name or location of the program." Lin acknowledged that he "left the program after one day as he did not wish to participate in the program." Lin had additionally refused the services of a "social worker in San Francisco at a homeless shelter that was attempting to assist [him] with substance abuse treatment services" because "he was confident he could maintain sobriety on his own." Lin nevertheless "expressed he was interested in participating in a substance abuse treatment program if the program was available in his native language, Cantonese, as he does not speak English."

At the sentencing hearing, defense counsel stressed that Lin's "criminality [was] a result of his drug issues." Counsel represented that Lin

---

[3] The theft charges were later dismissed.

4

"want[ed] to do drug treatment but ha[d] been frustrated while []his case ha[d] been pending" because he had made "zero progress in finding" any suitable programs. Counsel attributed the lack of progress in finding a drug program to Lin's status as a native Cantonese speaker, asserting that one program had stated that "they couldn't accommodate [Lin] or treatment in Cantonese." In counsel's opinion, Lin's physical state had improved while he was away from drugs in custody, and counsel hoped that probation could find a suitable program for Lin out of custody.

The trial court expressed empathy with counsel's position but observed that Lin committed his second robbery while on probation and "a very short period of time" after committing his strike offense, which was also a robbery. By their nature, the court observed, Lin's robberies were "really serious felonies," not "lower-level felonies." The court also "wish[ed] that [counsel] had better news . . . with regard to a program."

The trial court sought comments from the prosecutor, who stated that while neither of Lin's robberies was "the crime of the century," they were nonetheless "serious and violent crime[s]." The prosecutor also observed that Lin had engaged in "constant criminal behavior from the commission of his first robbery until his arrest on the second robbery. Lin's time on probation should have been "an opportunity for him to take advantage of the same resources that" he was requesting at sentencing and an "opportunity to shift gears and move in a different direction," but "that did not occur at all." Instead, Lin had presented "almost no evidence of any effort being made, prior to going into custody on this case, to improve his choices and to live a crime-free life," resulting in his committing a second robbery only a year after his original robbery conviction. The prosecutor concluded by observing that while drug treatment would likely help Lin, such a hypothetical benefit was

5

academic because "there [did] not seem to be a clear path to treatment" for him.

Defense counsel replied that the trial court should not "punish [Lin] for the fact that treatment [was] not available to him because he [didn't] speak English." The court responded, "That would be totally wrong. I would never punish somebody because treatment was not available because they didn't speak English. I'm sad that he doesn't have that option. But that is not going to factor into my consideration on *Romero* or sentencing at all. You are right. That would be a very, very bad thing for a Judge to consider." After defense counsel reiterated his hope that probation could find a drug program for Lin, the prosecutor clarified that "it wasn't [his] intention to request the court to punish [Lin] further because of his inability to speak English"; the prosecutor was only noting the "simple reality" that probation would be successful only if Lin would actually seek and receive treatment. Defense counsel volunteered that he had not intended to ascribe that intention to the prosecutor either.

In denying the *Romero* motion, the court observed that even though Lin's "drug issues were apparent" by the time he committed his first robbery, he spent his year on probation committing more offenses to feed his drug habit rather than trying to obtain treatment. One of those offenses, of course, was his second robbery, which, like the first offense was an "*Estes* robbery," in that the defendant employed the use of force or fear after the initial taking of property, was nevertheless a "serious" crime that could have resulted in someone being "seriously injured." (See *People v. Estes* (1983) 147 Cal.App.3d 23, 27–28 (*Estes*). The court did not "think that there [was] frankly an excuse for that path considering [Lin] had the opportunity to avail himself of the resources of supervised probation from the first case, which [was] the prior

6

strike." In summary, the court denied the *Romero* motion because Lin's "crimes [were] serious," his "drug issues were apparent with the prior strike," and yet Lin "did not choose to do anything to support himself or better himself."

## DISCUSSION

### A. *The Trial Court Did Not Abuse its Discretion in Denying the Motion to Dismiss the Prior Conviction*

#### 1. *Applicable Law*

We begin with a brief overview of California's Three Strikes law, which, as a result of the "strike" against Lin from his 2020 robbery conviction, is the focus of the issues surrounding Lin's sentencing, his appeal, and his habeas petition. When a defendant has been convicted of one or more prior felonies, the Three Strikes law in a new case removes a portion of the trial court's discretion in connection with sentencing. The law "establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court 'concludes that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme.' " (*People v. Strong* (2001) 87 Cal.App.4th 328, 337–338, fn. omitted.)

A trial court has the discretionary authority to strike one or more prior strike convictions "in furtherance of justice." (§ 1385; *Romero, supra,* 13 Cal.4th at p. 504.) In deciding whether to strike a prior strike, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should

7

be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

It is comparatively difficult, however, for a defendant to "strike a strike" for purposes of sentencing. As one court explained, "In this light, extraordinary must the circumstance be by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack. 'Where strict adherence to a statute's plain language also furthers its statutory purpose, such an interpretation can be safely said to effectuate its legislative intent.' And longer sentences for career criminals who commit at least one serious or violent felony certainly goes to the heart of the statute's purpose—or spirit." (*People v. Strong, supra*, 87 Cal.App.4th at p. 338, fn. omitted; see also *People v. Finney* (2012) 204 Cal.App.4th 1034, 1040 ["Once a career criminal commits the requisite number of strikes, the circumstance must be 'extraordinary' before he can be deemed to fall outside the spirit of the three strikes law"].)

On appeal, we review a trial court's decision not to strike a prior strike conviction for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).) There is a "legislative presumption that a court acts properly whenever it sentences a defendant in accordance with the three strikes law." (*Id.* at p. 376.) " 'The burden is on the party attacking the sentence [imposed for a criminal conviction] to clearly show that the sentencing decision was irrational or arbitrary.' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.) " '[W]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial

8

decision in conformity with the spirit of the law, [a reviewing court] shall affirm the trial court's ruling, even if [it] might have ruled differently in the first instance.'" (*Carmony*, at p. 378.)

2. *Analysis*

The trial court did not abuse its discretion in deciding not to strike Lin's prior conviction under the Three Strikes law.  The trial court's explanation of its reasoning at the hearing reflects that it balanced the relevant factors and reached an impartial decision in conformity with the spirit of the law.  Lin's prior strike was not remote (*Cf. People v. Solis* (2015) 232 Cal.App.4th 1108, 1124 [30-year-old strike]; *People v. Leavel* (2012) 203 Cal.App.4th 823, 837 [strike 25 years old by start of trial]; *People v. Eribarne* (2004) 124 Cal.App.4th 1463, 1469 [29-year-old strike]; Lin performed poorly on probation (see *In re Large* (2007) 41 Cal.4th 538, 552 [affirming denial of *Romero* motion based on appellant's poor parole and probation record]; see also *People v. Finney*, *supra*, 204 Cal.App.4th at p 1040 [affirming denial based partly on defendant's "failed attempts on probation and parole"]; *People v. Uecker* (2009) 172 Cal.App.4th 583, 599 [citing two parole violations]; *People v. Philpot* (2004) 122 Cal.App.4th 893, 907–908 [parole and probation violations]); and Lin had done little to address his substance abuse problems, for which he blamed his crimes.  (*Carmony*, *supra*, 33 Cal.4th at p. 378; see also *Philpot*, at pp. 907–908 [affirming denial of *Romero* motion where "prior rehabilitative efforts [had] been unsuccessful for defendant" and his "prospects for the future look[ed] no better than the past, in light of [his] record of prior offense and reoffense and his underlying drug addiction"].)

Lin does not meet his burden to show the trial court's ruling was irrational or arbitrary, but instead all but asks that we re-weigh the evidence.  In particular, Lin reiterates that he is willing to enter a residential

9

treatment facility, points out the prosecution said, "these were not 'crimes of the century,'" and argues that the trial court did not place enough weight on the fact that no injuries were reported after the first robbery and injuries were fairly minor in the second robbery. But, the court considered the alleged absence of violence in the commission of his former and current offenses and balanced it against the fact that both robberies were "*Estes*" robberies, involving a scuffle while Lin was attempting to get away from the scene. Lin did injure a loss prevention officer during the second robbery, hitting him in the face; the officer also complained of pain in his knees and fingers. Lin's views on the weight of the evidence may differ from those of the trial court, but it was not irrational or arbitrary for the court to decide the case fell within the scope of conduct to which the Legislature intended the Three Strikes law to apply. The record indicates the trial court considered Lin's arguments in making its ruling and found they did not favor dismissal of his recent prior robbery conviction in light of the totality of relevant factors.

The trial court plainly had a legitimate basis for its decision. Among other things, the court appropriately considered that even though Lin's past and present offenses were *Estes*-style robberies—robberies in which force or fear is not used until after the perpetrator has stolen the property (see *Estes*, *supra*, 147 Cal.App.3d at pp. 27–28)—they were still "serious" because in the ensuing scuffle "people can get very, very seriously injured." The court also considered that Lin's "drug issues were apparent with the prior strike," and yet Lin "did not choose to do anything to support himself or better himself" while he was on probation.

Finally, the sentence did not subject Lin to an inappropriately lengthy term even after the trial court refused to strike the recent robbery conviction.

10

The court afforded Lin leniency by imposing the low term of two years as the sentence for robbery. (See § 213, subd. (a)(2).) Even with this sentence doubled as a result of the prior robbery conviction, Lin only received an aggregate state prison term of four years. That sentence was still a year less than a sentence to the upper term (without prior strikes) of five years for robbery under section 213, subdivision (a)(2), and was well below the maximum possible 10-year sentence. (See *People v. Stone* (1999) 75 Cal.App.4th 707, 716–717.) "[A] defendant's sentence is also a relevant consideration when deciding whether to strike a prior conviction allegation; in fact, it is the overarching consideration because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences." (*People v. Garcia* (1999) 20 Cal.4th 490, 500.) We conclude that the trial court did not abuse its discretion by refusing to dismiss or set aside the prior robbery conviction. (*People v. Ortega* (2000) 84 Cal.App.4th 659, 666.)

## B.    *Trial Counsel Did Not Render Ineffective Assistance*

Lin argues that the trial court sentenced him in violation of the CRJA because the trial court sentenced him to state prison instead of probation with required drug treatment. He contends the outcome would have been different but for the unavailability of drug treatment programs in Cantonese. According to Lin, trial counsel provided ineffective assistance by not filing a CRJA motion on his behalf.[4] We do not find a CRJA violation. Since Lin's trial counsel was not required to bring a meritless motion, Lin cannot maintain his argument that he received ineffective assistance of counsel.

---

[4] Lin raises the same issues in his separate petition for habeas corpus (A166239).

11

1. *The CRJA*

The Legislature enacted the CRJA in 2020 with the expressed intent "to eliminate racial bias from California's criminal justice system" and "to ensure that race plays no role at all in seeking or obtaining convictions or in sentencing." (Stats. 2020, ch. 317, § 2(i), pp. 3707–3708; see *Young v. Superior Court* (2022) 79 Cal.App.5th 138, 149–150.) Its goal is "to provide remedies that will eliminate racially discriminatory practices in the criminal justice system, in addition to intentional discrimination." (Stats. 2020, ch. 317, § 2(j), p. 3708.) The CRJA enacted section 745, which provides that "[t]he state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin." (§ 745, subd. (a).)

Lin seeks to establish a claim of ineffective assistance of counsel by arguing his attorney failed to identify a violation of the CRJA for the trial court under subdivision (a)(4)(A) of section 745. That provision is concerned with racial bias in sentencing. Had he brought the motion, Lin would have needed to prove by a preponderance of the evidence that "[a] longer or more severe sentence was imposed on the defendant than was imposed on other similarly situated individuals convicted of the same offense, and longer or more severe sentences were more frequently imposed for that offense on people that share the defendant's race, ethnicity, or national origin than on defendants of other races, ethnicities, or national origins in the county where the sentence was imposed." (§ 745, subd. (a)(4)(A).)

Relief under the CRJA may be sought by motion prior to the entry of judgment or, if judgment has been entered, by petition for writ of habeas corpus. (§§ 745, subd. (b), 1473, subd. (f).) If the defendant proceeds by motion and "makes a prima facie showing of a violation of subdivision (a)" of

12

section 745, the court must hold a hearing on the defendant's motion. (§ 745, subd. (c).) A defendant makes a prima facie showing if he or she "produces facts that, if true, establish that there is a substantial likelihood that a violation of subdivision (a) occurred." (§ 745, subd. (h)(2).) A " 'substantial likelihood' requires more than a mere possibility, but less than a standard of more likely than not." (*Ibid.*)

  2. *Analysis*

  Here, Lin failed to make a prima facie showing of relief under the CRJA. Lin speculates that the trial court declined to strike his prior conviction and grant him probation instead of state prison based on his inability to speak English, and due to the lack of available treatment programs in Cantonese. The record does not allow us to infer that the trial court would have stricken Lin's recent prior robbery conviction so it could sentence Lin to probation and send him to a Cantonese drug treatment program. The court was not basing its decision on Lin's inability to speak English. Rather, the court explained that its decision to grant or deny the *Romero* motion did not hinge on the availability (or lack thereof) of a drug treatment program in Cantonese.

  As we noted above, the trial court considered the relatively short time between the prior conviction and the current offense; Lin's poor performance on probation; the serious nature of the offenses; and Lin's failure to seek treatment even before the current offense. Nothing in the record supports a claim that Lin's four-year prison term is a longer or a more severe sentence as compared to sentences imposed on persons of other races, ethnicities, or national origin who were convicted of robbery as a second strike under similar circumstances. Indeed, Lin's sentence is by statute the least severe

13

sentence a court may impose on a defendant convicted of robbery (see § 213) under the Three Strikes law.

The facts Lin has produced in support of his CRJA violation are insufficient as a matter of law to establish a substantial likelihood that a violation of section 745, subdivision (a) occurred.  (§ 745, subd. (h)(2).)  Trial counsel did not render ineffective assistance by failing to raise a meritless motion.  (*People v. Bradley* (2012) 208 Cal.App.4th 64, 90.)[5]

## DISPOSITION

The judgment is affirmed.

---

[5] By separate order, we have also denied Lin's related petition for habeas corpus (A166239), which raises the same claims.

_____

Markman, J.*

We concur:

_____

Stewart, P.J.

_____

Richman, J.

*People v. Lin* (A164923)

     \* Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.